IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | |
|---|---|
| YVETTE T. NIETO § § | |
| V. § § § | CIVIL ACTION NO. 1:22-cv-148 |
| § | JURY TRIAL |
| SAN BENITO HOUSING AUTHORITY, § SAN BENITO HOUSING § & DEVELOPMENT CORPORATION, § and § COMMUNITY HOUSING SERVICES § CORPORATION, § CITY OF SAN BENITO, § RICARDO GUERRA, JOHNNY GUERRA, § and BEN CORTEZ § | |

## PLAINTIFF'S ORIGINAL COMPLAINT

TO THE HONORABLE DISTRICT JUDGE:

Comes Now YVETTE T. NIETO, Plaintiff herein, and files this Original Complaint against Defendants SAN BENITO HOUSING AUTHORITY (SBHA), SAN BENITO HOUSING & DEVELOPMENT CORPORATION and COMMUNITY HOUSING SERVICES CORPORATION, CITY OF SAN BENITO, RICARDO GUERRA, JOHNNY GUERRA and BEN CORTEZ, and in support shows:

### I.

### PARTIES

1. Plaintiff Yvette T. Nieto ("Plaintiff" or "Nieto") is currently a citizen and resident of Cameron County, Texas, and is a former employee of Defendants San Benito Housing Authority ('SBHA'), San Benito Housing & Development Corporation and Community Housing Services Corporation in Cameron County, Texas. All relevant events occurred within this federal district.

2. Defendant San Benito Housing Authority ('SBHA') is located in and doing business in Cameron County, Texas. Defendants' Executive Director is Art Rodriguez, and may be served by service on Defendant's Executive Director Art Rodriguez at 1400 N Reagan St, San Benito, TX 78586.

3. Defendants San Benito Housing & Development Corporation and Community Housing Services Corporation, Inc. are interrelated entities with SBHA; and they are located in and doing business in Cameron County, Texas. Defendants have the same Executive Director, Art Rodriguez, as SHBA and may be served by service on Executive Director Art Rodriguez at 1400 N Reagan St, San Benito, TX 78586.

4. Defendant City of San Benito is a city located in Cameron County, Texas.

5. Defendant Ricardo Guerra is an individual residing in San Benito, Cameron County, Texas and was the Mayor of the City of San Benito during these events.

6. Defendant Johnny Guerra is an individual residing in San Benito, Cameron County, Texas.

7. Defendant Ben Cortez is an individual residing in San Benito, Cameron County, Texas and was the Chairman of Defendant SBHA Board of Commissioners.

8. Plaintiff has requested that Defendants execute and file a Waivers of Citation and Service.   If Defendant does not agree to a waiver, service may be requested.

9. Should Plaintiff learn that the business is owned by a different corporation or other business entity, then the Plaintiff would request leave to add as a proper party, substitute the true name and/or to serve said corporation or business entity.

**II.**

**JURISDICTION AND VENUE**

10. Venue is proper in the Southern District of Texas, and in that, all or a substantial part of the events or omissions giving rise to this cause of action occurred in the Southern District of Texas and/or the Plaintiff is a resident within this District. Moreover, venue is proper in the Southern District of Texas in that Defendants conduct business within this district.

11. This Court has jurisdiction pursuant to a federal question 28 USC Sec. 1331. Plaintiff invokes this Court's subject matter jurisdiction seeking relief pursuant to Title VII (42 USC Sec. 2000e et seq); 42 USC Sec. 1983; and 42 USC Sec. 1988.

12. Pursuant to 28 USC Sec. 1367, Plaintiff also asserts Pendent / Supplemental Jurisdiction for Plaintiff's discrimination claims for relief for violations of the Texas Labor Code (Tex.Lab.Code Sec. 21 et seq)

13. Pursuant to 28 USC Sec. 1367, Plaintiff further pleads a state law cause of action for breach of contract, tortious interference with a contract and civil conspiracy. Plaintiff asserts this Court has pendent claims/supplemental jurisdiction over these claims which involve the same parties and are so related to the claim giving rise to this Court's original jurisdiction that they form part of the same case or controversy within Article 3 of the U.S. Constitution and the Court can assert supplemental jurisdiction pursuant.

**III.**

**MISNOMER/MISIDENTIFICATION**

14. In the event any parties are misnamed or are not included herein, it is Plaintiff's contention that such was a "misidentification," "misnomer" and/or such parties are/were "alter egos" of parties named herein. Alternatively, Plaintiff contends that such "corporate

veils" should be pierced to hold such parties properly included in the interest of justice.

## IV.

## RESPONDEAT SUPERIOR

15. Employees involved in this cause of action were at all times described herein employees and vice-principals of defendant(s) and were at all times acting in the course and scope of that employment. Accordingly, defendant(s) are liable for such conduct under the doctrine of *Respondeat Superior*.

16. At all times relevant to this lawsuit, Defendant( s), its / their agents and employees, was/were aware of the acts and omissions alleged herein, and through its authorized employees, agents, officers, executives, or representatives, knowingly formulated, participated in, and/or approved the wrongful and illegal conduct complained of herein.

## V.

## PROCEDURAL STATEMENT

17. Plaintiff has satisfied all administrative conditions precedent to filing suit for the currently pending claims herein. Plaintiff anticipates filing other employment related claims after administrative review by the relevant state and federal agencies.

## VI.

## RELEVANT FACTS

18. Plaintiff is a fifty-six year-old female Hispanic.

19. On or about 1999, Plaintiff began her career in the Federal Housing Authority field working for the Alice Housing Authority as a clerk.

20. On or about 2003, Plaintiff was promoted to the position of Programs Director for Alice Housing Authority. The Alice Housing Authority had approximately 500 family units.

      Plaintiff supervised Public Housing Sec. 8 Program and the New Construction Program. Plaintiff held that position for approximately 5 years.

21. On or about 2007, Plaintiff moved to the Corpus Christi Housing Authority where Plaintiff worked as the Home Ownership Coordinator and the Family Self Sufficiency Coordinator. The Corpus Christi Housing Authority had over 1,000 family units.

22. On or about 2008, Plaintiff became the Executive Assistant to the CEO at the Corpus Christi Housing Authority. Plaintiff was involved the day-to-day operational paperwork and would be in charge when the CEO was out of the office.

23. On or about 2009, Plaintiff became the Executive Director at the Gregory Housing Authority. United States Department of Housing and Urban Development (HUD) administers federal housing and urban development laws.  Prior to Plaintiff starting as the Executive Director, HUD had evaluated the Gregory Housing Authority and rated it as a "Troubled" entity. Plaintiff worked as the Gregory Housing Authority's Executive Director for approximately eight (8) years. Plaintiff was the top supervisor, hired staff, trained staff, installed new programs and oversaw daily operations.  Plaintiff's expertise, experience, skill and effort resulted in HUD rating the Gregory Housing Authority as a "High Performance" entity before Plaintiff left to work for Defendants.

24. Plaintiff had gained expertise by performing every function of a housing authority.

25. On or about October 2017, Plaintiff and Defendants entered into a contract, where Plaintiff became the Defendants' Executive Director for a three  (3) year term beginning October 1, 2020, and which would end October 1, 2025.

26. On or about September 16, 2020, Plaintiff and Defendants entered into a contract, where Plaintiff became the Defendant SBHA's Executive Director for a five (5) year term

beginning October 1, 2020, and which would end October 1, 2025.

27. As Executive Director, Plaintiff would perform and direct the day-to-day operation of San Benito Housing Authority (SBHA). The daily operation included implementing the rules and policies that the SBHA Board of Commissioners passed; and implementing and complying with all Federal, State and Local Ordinances and Statutes that apply to the operations of the SBHA. Plaintiff reported directly to the Board of Commissioners and kept the Board informed of all and all daily business of the SBHA which impacted the Board's governing authority over the SBHA. Plaintiff managed all SBHA employees. Plaintiff ensured that daily operations were conducted expeditiously and in accordance with SBHA business.

28. Plaintiff asserts that Defendants breached the terms of Plaintiff's employment contract between Plaintiff and Defendants and has refused to pay all amounts owed under the contract even after demand for payment.

29. Plaintiff was subjected to a hostile work environment, workplace intimidation, humiliation, discrimination, retaliation and wrongful termination.

30. After Plaintiff began working for Defendant, Plaintiff became aware of allegations that a female employee was being sexually harassed by a male employee. In November of 2020, Plaintiff conducted an investigation of workplace sexual harassment by one employee against another employee. The employee alleged to be committing the sexual harassment was Johnny Guerra. It was found that sexual harassment had occurred and Plaintiff fired Johnny Guerra.

31. December of 2020, Ricardo Guerra was elected as Mayor of San Benito.

32. Ricardo Guerra was Johnny Guerra's brother.

33. Shortly thereafter, Ricardo Guerra was elected, Mayor Guerra appointed Ben Cortez as the Chairman of the Defendant's Board of Commissioners.

34. On or about February 1, 2021, Board Member Ben Cortez met with Plaintiff, and informed Plaintiff that Mayor Guerra had appointed him (Ben Cortez) to find out why Plaintiff had terminated his brother, Johnny Guerra.

35. On or about February 4, 2021, Mr. Cortez confronted Plaintiff in her office demanding personal information regarding the former Chairperson Rosanna Aguilera. Plaintiff explained to Ben Cortez that Plaintiff could not release Ms. Aguilera's personal information because Ms. Aguilera was no longer a member of the board and the Defendant housing authority had policies regarding the release of personal information. Mr. Cortez became very angry, stood up and started shouting at Plaintiff in a loud enough voice that employees in the front lobby could hear. In her 22 years of working, Plaintiff had never been humiliated or treated in that manner by a resident, a co-worker and especially not by a member of the board.

36. On or about February 5, 2021, Plaintiff met with Mr. Rosas and Ben Cortez in Plaintiff's office. Mr. Rosas told Ben Cortez that he (Ben Cortez) could not address Plaintiff or any employee in that manner and that in the future if Ben Cortez wanted to communicate with Plaintiff, Ben Cortez had to have either another Board member present, during the board meeting or by email.

37. In March of 2021, the Board held an Executive Session where the main topic of discussion was the firing of Johnny Guerra, Mayor Guerra's brother.

38. In June of 2021, Plaintiff wrote a letter to Mayor Guerra listing Mrs. Aguilera's time on the Board and accomplishments that the housing authority had achieved during Mrs.

Aguilera's tenure on the board during May.

39. In August of 2021, at an Executive Session of the Board, Ben Cortez raised the issue Johnny Guerra's termination. Ben Cortez told Plaintiff "who do you think you are" and that Plaintiff "should not bite the hand that feeds me (Plaintiff)". Cortez presented a document to Plaintiff with several "charges/allegations" against Plaintiff. The Board gave Plaintiff a written reprimand.

40. September 6, 2021, Plaintiff submitted a grievance to Defendants regarding the above acts, hostile environment, harassment, discrimination and retaliation.

41. In the September of 2021, Cortez had called for Special Meeting Executive Session regarding Plaintiff. There was no notice of issues regarding Plaintiff's job posted.

42. On or about September 29, 2021, Defendant terminated Plaintiff.

43. Defendant hired a male, Art Rodriguez, to replace Plaintiff.

44. Defendant removed the female Executive Director with a male, David Cortez.

45. On October 1, 2021, Plaintiff had been selected to being and was to begin as the President for Texas with the National Association of Housing and Redevelopment Office. Plaintiff would have been the first Hispanic female to hold this position. The President for Texas position with the National Association of Housing and Redevelopment Office required that the person selected had to be currently employed as an Executive Director of a Housing Authority. Plaintiff had to withdraw from that position because Defendant fired Plaintiff as its Executive Director two days before Plaintiff was to begin with the National Association of Housing and Redevelopment Office as the Texas President position.

46. At the time Defendant terminated Plaintiff, Plaintiff had made the Defendant into a high

preforming agency, always had compliant audits, had always received very successful desk reviews; had managed the Defendant Housing Authority through the pandemic; had kept the employees safe; had served and assisted the residents; had trained and mentored the staff; and had improved the morale and fostered an environment of teamwork and efficiency.

## VII.

## DISCRIMINATION CLAIMS

### CAUSES OF ACTION:

### VIOLATION OF TITLE VII, 42 U.S.C.  2000 et seq.

### AND

### VIOLATION OF CHAPTER 21 OF THE TEXAS LABOR CODE

PROCEDURAL STATEMENT

47. Plaintiff has received her EEOC Right to Sue which is attachment 1 to this Complaint.

48. Over 180 days have passed since Plaintiff filed her EEOC / TWC-CRD Charge of Discrimination regarding her discrimination claims asserted in this lawsuit.

49. Plaintiff reasserts and incorporates by reference the above numbered paragraphs secs. 16-44. Plaintiff asserts alternative theories of recovery.

50. Defendant violated Plaintiff's rights under Title VII / 42 USC 2000 et seq. by discharging and otherwise discriminating against her on the basis of her gender (female) or in the alternative on the basis of Plaintiff engaging in protected activity with respect to her compensation, terms, conditions, and privileges of employment; and by limiting, segregating, and classifying her in a way which deprived or tended to deprive her of employment opportunities or adversely affected her  status as an employee, including

terminating Plaintiff.

51. Plaintiff was a fifty-six (56) year old Hispanic female at the time of these events.

52. Plaintiff opposed and protested discrimination.

53. Plaintiff remained, at all times, qualified for the job she held while employed by Defendant. Plaintiff diligently performed the requirements of her job while employed by Defendant.

54. Plaintiff was subjected to a hostile working environment, protested discrimination, was subjected to retaliation, and terminated. Plaintiff was replaced by a male, Art Rodriguez.

Plaintiff Asserts Alternative Theories

55. **Gender**: Plaintiff asserts that Plaintiff's gender (female) was a motivating / determinative factor being subjected to a hostile work environment and in the decision to end Plaintiff's employment. Plaintiff suffered damages as a result of Defendant' violations of Title VII / 42 USC 2000 et seq.

56. **In the alternative**: **Retaliation:** Plaintiff reasserts and incorporates by reference all of the above numbered paragraphs.

57. Plaintiff had a reasonable and good faith belief that Johnny Guerra and the Defendant was/were engaging in discriminatory practices and that such good faith belief invoked the protections of discrimination statutes.

58. Plaintiff asserts that Plaintiff's engaging in conduct protected   under the statutes and opposing discrimination was a determinative   factor of being subjected to a hostile work environment and in the decision to end Plaintiff's employment.

59. Plaintiff asserts that engaging in conduct protected under   Title VII / 42 USC 2000 et seq. was a motivating / determinative / but for factor of being subjected to a hostile work

environment and /or in the decision to end Plaintiff's employment—Plaintiff's termination. Plaintiff suffered damages as a result of Defendant' violations of the retaliation.

### State Claims Tex. Lab. Code Sec. 21 et seq

60. Plaintiff reasserts and incorporates by reference the above numbered paragraphs, secs. 16-44.

61. Defendant violated Plaintiff's rights under Texas Labor Code Sec. 21 et seq. by discharging and otherwise discriminating against her on the basis of her gender (female) or in the alternative on the basis of Plaintiff engaging in protected activity with respect to her compensation, terms, conditions, and privileges of employment; and by limiting, segregating, and classifying her in a way which deprived or tended to deprive her of employment opportunities or adversely affected her status as an employee, including terminating Plaintiff.

62. Plaintiff was a fifty-six (56) year old Hispanic female at the time of these events.

63. Plaintiff opposed and protested discrimination.

64. Plaintiff remained, at all times, qualified for the job she held while employed by Defendant. Plaintiff diligently performed the requirements of her job while employed by Defendant.

65. Plaintiff was subjected to a hostile working environment, protested discrimination, was subjected to retaliation, and terminated. Plaintiff was replaced by a male, Art Rodriguez.

### Plaintiff Asserts Alternative Theories

66. **Gender**: Plaintiff asserts that Plaintiff's gender (female) was a motivating / determinative actor being subjected to a hostile work environment and in the decision to end Plaintiff's

employment. Plaintiff suffered damages as a result of Defendant' violations of Tex. Lab. Code Sec. 21 et seq.

67. **In the alternative: Retaliation:** Plaintiff reasserts and incorporates by reference all of the above numbered paragraphs.

68. Plaintiff had a reasonable and good faith belief that Johnny Guerra and the Defendant was/were engaging in discriminatory practices and that such good faith belief invoked the protections of discrimination statutes.

69. Plaintiff asserts that Plaintiff's engaging in conduct protected under the statutes and opposing discrimination was a determinative factor of being subjected to a hostile work environment and in the decision to end Plaintiff's employment.

70. Plaintiff asserts that engaging in conduct protected under Tex.Lab.Code Sec. 21 et seq. was a motivating / determinative / but for factor of being subjected to a hostile work environment and /or in the decision to end Plaintiff's employment—Plaintiff's termination. Plaintiff suffered damages as a result of Defendant' violations of the retaliation.

## VIOLATION OF 42 USC Sec. 1983

71. In the alternative, Plaintiff asserts a violation of 42 USC Sec. 1983. Plaintiff reasserts and incorporates by reference the above numbered paragraphs, secs. 16-44.

72. Defendant City of San Benito: Under *Section 1983*, Defendant City of San Benito, as a city may be treated as a person and may be held liable for the deprivation of a citizen's federal rights; and Plaintiff submits that the action complained of that violated the plaintiff's federal rights was made by the Mayor of San Benito, Ricardo Guerra decision officially adopted and promulgated by the city's officers, in this case Mayor Ricardo

Guerra.

73. Plaintiff alleges that Defendants Ricardo Guerra, in his official and individual capacities, and Ben Cortez, in his official and individual capacities, jointly and/or severally deprived Plaintiff of her rights, privileges and immunities secured by 42 USC 2000 et seq.

74. Federal Law, 42 USC Sec. 1983 provides: "Every person who, under color of any statute, ordinance, regulation, custom or usage, of any state or territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or any other person within the jurisdiction thereof to the deprivation of any law, privileges or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

75. Plaintiff asserts that Defendants deprived her acting under the color of state law. State officials act "under color" of the authority of the State when they act while the officials are purporting or pretending to act in the performance of their official duties. An official act "under color" of the state authority if he abuses or misuses a power that he possesses only because he is an official.

   a. Defendant Ricardo Guerra, in his individual capacity and in his official capacity as the Mayor of San Benito.

   b. Defendant Ben Cortez: in his individual capacity and in his official capacity as the Chairman of the Board of Commissioners of San Benito Housing Authority, San Benito Housing & Development Corporation and San Benito Community Housing Services Corporation.

## VIII.
## PENDENT CLAIM

## BREACH OF CONTRACT

76. In the alternative, Plaintiff asserts a breach of contract claim pursuant to Tex.Civil & Remedies Code Sec. 38 et seq. Plaintiff reasserts and incorporates by reference the above numbered paragraphs, secs. 16-44.

77. On or about September 16, 2020, Plaintiff and Defendants entered into a contract, where Plaintiff became the Defendants' Executive Director for a five (5) year term beginning October 1, 2020, and which would end October 1, 2025.

78. On or about September 29, 2021, Defendant terminated Plaintiff without Good Cause.

79. Pursuant to the parties' contract, the Compensation and Benefits: Plaintiff earned:

   a. Annual base salary of $82,890 for a five (5) year term beginning October 1, 2020, and which would end October 1, 2025.

   b. All salary adjustments to reflect salary adjustments that were provided or required by SBHA's compensation policies;

   c. Adjustments such that Plaintiff remained the highest paid professional in employment with SBHA.

80. Plaintiff is also entitled to recover reasonable attorney's fees.

## IX.

## PENDENT CLAIM

## TORTIOUS INTERFERENCE WITH EXISTING CONTRACT

81. Plaintiff reasserts and incorporates by reference all of the above numbered paragraphs.

82. In the alternative, Plaintiff pleads a cause of action for an actionable Civil Tortious Interference with Existing Contract and would show:

   (1) Plaintiff had a valid contract;

(2) Defendants Ricardo Guerra and Ben Cortez willfully and intentionally interfered with Plaintiff's contract;

(3) The interference proximately cause the Plaintiff injury, which ended with Plaintiff's termination; and

(4) Plaintiff incurred actual damage or loss.

83. Plaintiff submits that each conspirator is responsible for the acts done by any other conspirator to further the conspiracy; and further that "the common purpose from which conspiracy liability arises may be established by reasonable inferences."

84. Plaintiff has incurred lost wage, mental anguish, injury to reputation and is entitled to exemplary damages.

## PENDENT CLAIM

## CIVIL CONSPIRACY

85. Plaintiff reasserts and incorporates by reference all of the above numbered paragraphs.

86. In the alternative, Plaintiff pleads a cause of action for an actionable civil conspiracy wherein two or more persons sought to and did accomplish an unlawful purpose or sought to accomplish a lawful purpose by unlawful means.

87. Plaintiff has asserted and established the essential elements for a civil conspiracy which are:

(1) two or more persons (Ricardo Guerra and Ben Cortez) agreed on,

(2) an object to be accomplished (Plaintiff's termination and/or termination of Plaintiff's Contract of Employment),

(3) a meeting of minds on the object or course of action (to fire Plaintiff),

(4) one or more unlawful, overt acts (Plaintiff's termination) and

  (5) damages as the proximate result (Plaintiff lost wages)

88. Plaintiff submits that each conspirator is responsible for the acts done by any other conspirator to further the conspiracy; and further that "the common purpose from which conspiracy liability arises may be established by reasonable inferences."

### Jury Demand

89. Plaintiff demands a jury trial and tenders any required fee.

### Prayer

90. For these reasons, Plaintiff prays that this Court enter a judgment in her favor and against Defendant for the following:

  a. Actual damages;

  b. Liquidated damages as allowed by any applicable statute;

  c. Compensatory damages

  d. Exemplary damages;

  e. Lost back wages;

  f. Lost future wages in lieu of reinstatement;

  g. Reasonable attorney's fees, including expert witness fees;

  h. Pre-judgment and post-judgment interest;

  i. All relief available to Plaintiff for her claim for Civil Conspiracy;

  j. Costs of court; and

  k. All further legal and equitable relief to which Plaintiff may be entitled.

Plaintiff further prays that Defendants be cited to appear and answer herein and for all the relief requested above be rendered for Plaintiff and against Defendant(s), for the damages set out above in the amount deemed reasonable under the circumstances, along with attorney's fees,

costs of court, pre-judgment interest, post-judgment interest and for such other and further relief to which Plaintiff may show herself justly entitled.

        **Respectfully Submitted,**

        By: **/s/ Adam Poncio**
        **Adam Poncio**
        **State Bar No. 16109800**
        **aponcio@ponciolaw.com**
        **Alan Braun**
        **State Bar No. 24054488**
        **abraun@ponciolaw.com**

        **PONCIO LAW OFFICES**
        **A Professional Corporation**
        **5410 Fredericksburg Rd., # 109**
        **San Antonio, Texas 78229-3550**
        **Telephone:    (210) 212-7979**
        **Facsimile:    (210) 212-5880**

        **Chris McJunkin (Of Counsel)**
        **SDN 23548**
        **State Bar #13686525**
        **4510 Anthony St.**
        **Corpus Christi, Tx. 78415**
        **Tel: (361) 882-5747**
        **Fax: (361) 882-8926**
        **cmcjunkin@stx.rr.com**

        **ATTORNEYS FOR PLAINTIFF**